UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-5 (JNE/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT'S AMENDED AND |
| v. | ) | SUPPLEMENTAL MOTIONS TO |
| | ) | SUPPRESS EVIDENCE AND REQUEST |
| ALEXANDER FAULKNER, | ) | FOR FRANKS HEARING |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Benjamin Bejar, Assistant United States Attorney, hereby submits its opposition to the defendant's Amended Motion to Suppress Evidence [ECF No. 42][1] and to the defendant's Supplemental Motion to Suppress and Request for a Franks Hearing [ECF No. 39]. Based upon any reply filed by the defendant or any oral arguments before the Court, the United States respectfully requests the opportunity to file supplemental briefing if necessary.

The defendant seeks blanket suppression of all evidence obtained from the execution of a GPS tracking order on the defendant's vehicle, four residential search warrants, and a DNA search warrant following the defendant's arrest. The defendant also seeks a *Franks* hearing based on his assertions that the affidavits contain material misrepresentations and/or omissions. Because a fair and common-sense reading within the four corners of each affidavit shows that the issuing magistrate had a substantial basis

[1] The defendant initially filed a motion to suppress evidence [ECF No. 23] on February 6, 2014, but then filed an *amended* motion to suppress evidence [ECF No. 42] on March 19, 2014. Accordingly, the United States will only respond to the amended motion (ECF No. 42).

to find probable cause to issue the warrants, the defendant's motion to suppress should be denied. Because the challenged affidavits on their face do not contain material misrepresentations or inconsistencies and because the purported omissions are not material to probable cause, the defendant has failed to meet his exacting burden of a substantial preliminary showing, and the request for a *Franks* hearing should be denied. Because these issues can properly be decided by oral argument and supplemental briefing, the United States does not intend on calling witnesses at the motions hearing but respectfully requests the right to do so at a later date should the Court decide that an evidentiary hearing is warranted.

## I. BACKGROUND AND RELEVANT FACTS

In late September 2013, investigators with the Minneapolis Police Department's Weapons Unit received information from a confidential reliable informant ("CRI") that the defendant was trafficking heroin from Chicago to Minneapolis. The CRI told investigators that the defendant travels to Chicago every one to three weeks in either a silver Chrysler 300C or an orange four-door pickup truck, picks up heroin, and then returns to Minneapolis to distribute the heroin. The CRI stated that the CRI has seen the defendant return from Chicago with heroin to the residence at 11** James Avenue. The CRI also told investigators that the defendant lives or stays at 11** Hamline Avenue.

Investigators checked DVS records and learned that the defendant has both a silver Chrysler 300C [UWH***] and an orange Chevy Avalanche pickup truck [114***] registered to him at the 11** Hamline Avenue address, but lists his address as 11** James Avenue. Investigators also observed the defendant driving the Chevy Avalanche

and observed it parked at the 11** Hamline Avenue address. Investigators applied for and obtained a GPS tracking order to place a GPS tracking device on the defendant's vehicles and monitor their locations and travel. Investigators placed the tracking device on the Chevy Avalanche and began to monitor its travels.

On October 16, 2013, Investigators monitored the Chevy Avalanche through the GPS tracking device as it traveled to Chicago, remained for approximately four hours, and then returned to the 11** Hamline Avenue address at approximately 11:45 p.m. Investigators continued to monitor the Chevy Avalanche and observed that it then traveled the next day (October 17) to 11** James Avenue at approximately 12:15 p.m.

On October 21, 2013, Investigators again monitored the Chevy Avalanche through the GPS tracking device and observed that it had again traveled to Chicago. In anticipation of the defendant returning to Minneapolis, Officer Christopher Humphrey applied for and obtained search warrants for the Chevy Avalanche, the 11** James Avenue address, and the 11** Hamline Avenue address. With the assistance of the Minnesota State Patrol, investigators stopped the Chevy Avalanche shortly after it crossed into Minnesota from Wisconsin and detained the occupants, including the defendant who was seated in the backseat. Investigators conducted a preliminary inventory search of the vehicle and located a small amount of marijuana and paraphernalia from one of the occupant's purse and a small amount of hash in the vehicle and then drove the vehicle to the Minneapolis SOC to later have it towed to the impound lot so that the search warrant could be executed. At approximately 7:40 a.m. on October 22, investigators simultaneously executed the search warrants at 11** James Avenue and

11** Hamline Avenue. The vehicle search warrant was executed two days later on October 24.

At the 11** Hamline Avenue address, which is a one-bedroom apartment, investigators seized from a dresser in the defendant's locked bedroom, two firearms, a loaded Smith & Wesson .357 revolver, and a Taurus 9mm semi-automatic pistol, a 9mm magazine and two boxes of 9mm ammunition (100 rounds total), and a partial brick of heroin that weighed over 60 grams. Inside the same dresser drawer as the firearms, investigators located prescription pill bottles with the defendant's name on them. On top of the dresser investigators seized a small amount of heroin. In the kitchen, investigators seized a digital scale and about 9 grams of heroin.

## II. ARGUMENT

### A. There is no basis to suppress the evidence seized.

An independent and neutral magistrate reviewing an affidavit for probable cause to issue a search warrant need only make a practical, common-sense decision, viewing the totality of all the circumstances set forth, that a "fair probability" exists that contraband, or evidence of a crime, will be found in the particular place to be searched. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Gladney,* 48 F.3d 309, 312 (8th Cir. 1995); *United States v. Tagbering,* 985 F.2d 946, 949 (8th Cir. 1993). "A determination whether probable cause has been established involves a 'practical, common sense' evaluation of the 'totality of the circumstances.'" *United States v. Reivich*, 793 F.3d 957, 959 (8th Cir. 1986). As such, "great deference" is to be accorded

the issuing magistrate's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008); *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

"On a motion to suppress, a district court should not make a de novo determination of probable cause." *Reivich*, 793 F.3d at 959. Rather, "[s]earch warrant '[a]pplications and affidavits should be read with common sense and not in a grudging, hyper-technical fashion.'" *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quoting *United States v. Goodson*, 165 F.3d 610, 613 (8th Cir. 1999)). "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *Reivich*, 793 F.3d at 959. Reliability can be established through independent corroboration or a track record of providing trustworthy information. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Independent corroboration of information supplied by an informant permits the reasonable inference that "the informant is reliable" and that "other information that the informant provides, though uncorroborated, is also reliable." *Id.* Indeed, it is well established that "[e]ven 'the corroboration of minor, innocent details'" can suffice to establish probable cause. *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *United States v. Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)). "[I]t is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details." *Reivich*, 793 F.3d at 960.

But even when probable cause is found lacking, the evidence seized is still not subject to suppression where an officer's reliance on the search warrant is reasonable

because the warrant is not "so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Hudspeth*, 525 F.3d at 676.

Here, given the great deference to be accorded search warrants, a fair and common-sense reading of each affidavit within its own four corners shows that, given the totality of all the circumstances set forth, a "fair probability" existed that evidence of a crime would be found in the particular place to be searched. The affidavits sufficiently established the veracity and reliability of the CRI and sufficiently corroborated the information provided. After all, the "touchstone is 'probability,' and not 'certainty.'" *Reivich*, 793 F.3d at 963. But even if probable cause is found to be lacking, it cannot be said that the affidavits were so facially deficient to preclude the *Leon* good-faith exception from applying to the executing officers' reasonable reliance on the search warrant because "a reasonably well-trained officer would not have known that the search was illegal despite the issuing judges' authorization." *Hudspeth*, 525 F.3d at 676. As such, the defendant's motion to suppress evidence should be denied.

B. <u>The defendant is not entitled to a Franks hearing</u>.

The defendant claims that a Franks hearing is necessary because the affidavits in support of the GPS tracking order and the search warrants for 11** James Avenue and

11** Hamline Avenue contain material statements that are "either intentionally false" or "made in reckless disregard for the truth" and "omitted material facts" that made the affidavit "misleading." Again, a fair and common-sense reading of each affidavit shows that the affidavits are not inconsistent with one another and any omissions are not material to a finding of probable cause. Accordingly, the defendant is not entitled to a *Franks* hearing.

A defendant seeking a *Franks* hearing must make a "substantial preliminary showing." *United States v. Lucca*, 377 F.3d 927, 931 (8th Cir. 2004). "[T]o merit a *Franks* hearing, [a defendant] must show both (1) that the affiant [] 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). "'The requirement of a substantial preliminary showing is not lightly met.'" *Id.* (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)). And "[m]ere allegations of deliberate or reckless falsehoods are insufficient." *Id.* at 899.

Here, the majority of the defendant's alleged inconsistencies and/or omissions are minor or not inconsistent at all. For instance, the defendant alleges that in the GPS tracker affidavit, the affiant stated that a DVS photo of the defendant was shown to the CRI, whereas in the residential search warrant affidavits, the affiant stated that the CRI provided a photo of the defendant. But "minor discrepancies or omissions . . . do not establish deliberate or reckless falsehood." *Id.* at 898 (citing *United States v. Coleman*, 349 F.3d 1077, 1084 (8th Cir. 2003) ("A 'minor discrepancy' in the wording of an

officer's statement is not sufficient under Franks to establish that the officer acted deliberately or recklessly in making the statement."). This was clearly a simple mistake. But even if it could be deemed a deliberate, intentional falsehood, striking it from the residential search warrant affidavits would not defeat probable cause, as the affidavits established that the CRI had personal knowledge of the defendant and his alleged drug trafficking. *See Reivich*, 793 F.3d at 962 (noting that courts reviewing probable cause on based on challenge of misrepresented or omitted information look to "corrected" affidavit).

The defendant also emphasizes that the 11** Hamline Avenue and the 11** James Avenue affidavits contradictorily state that during the tracking of the defendant's vehicle on October 16, the defendant returned to both the residents "shortly after returning to Minneapolis," and that "[t]hese statements cannot both be correct." But the defendant's general summary of the affidavits unfairly mischaracterizes the actual statements in the affidavits. In the 11** Hamline Avenue affidavit, the affiant states that the defendant "*drove back* to 11** Hamline" after being in Chicago for four hours, whereas the 11** James Avenue affidavit states that the defendant "*eventually returned* to 11** James" after being in Chicago for four hours. There simply is nothing inconsistent about these two statements, which clearly state a temporal difference in time, and their veracity is borne out by the GPS tracking data produced in discovery, which shows that the defendant *drove back* to 11** Hamline Avenue at approximately 11:45 p.m. on October 16, and then *eventually returned* to 11** James Avenue on October 17 at approximately 12:15 p.m. Nor is there anything inconsistent or deliberately false or misleading from

stating that both of these events occurred "shortly after returning to Minnesota during the night." The defendant's hyper-technical and overly exacting reading of the affidavits is at odds with the Supreme Court's guidance in *Gates*. *See Hudspeth*, 525 F.3d at 674.

The defendant also points out that in the 11** Hamline Avenue affidavit, the affiant states that the CRI told him that the defendant "lives" at 11** Hamline, whereas in the 11** James Avenue (and in the vehicle) affidavits, the affiant states that the CRI told him that the defendant "stays" at 11** Hamline. Again, such a minor discrepancy is simply a question of semantics and cannot establish a deliberate or reckless falsehood.

The defendant also notes that in the 11** Hamline affidavit, the affiant materially omitted all the CRI's information about observations made and the defendant's drug-trafficking activity at 11** James Avenue. But a "law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Arnold*, 725 F.3d at 898-99 (citing *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001)). And to meet the *Franks* standard, deliberate material omissions must be "'clearly critical' to the finding of probable cause." *Reivich*, 793 F.3d at 961. But even if these (immaterial) omissions could be deemed to have made the 11** Hamline affidavit "misleading," the defendant still cannot show that "the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Id*. Supplying all of the CRI's information regarding the 11** James Avenue address into the 11** Hamline affidavit would not defeat probable cause to search the 11** Hamline Avenue address.

At bottom, it is evident that even assuming the challenged affidavits contained deliberate or reckless falsehoods or material omissions, the defendant's request for a *Franks* hearing would still fail "because the affidavit established probable cause even absent any misrepresentations and including the omitted information." *Arnold*, 725 F.3d at 899. Here, as in *Arnold*, the defendant has managed to identify only "a few colorable misrepresentations and omissions in the affidavit[s], none of which were intentional or reckless and none of which were necessary to the probable cause determination." *Id*. at 899-900 (affirming district court's denial of defendant's request for *Franks* hearing). The defendant has failed to meet his exacting, substantial burden, and his request for a *Franks* hearing should therefore be denied.

## III. CONCLUSION

For all the foregoing reasons, the defendant's motion to suppress evidence and the defendant's motion for a *Franks* hearing should be denied.

Dated: April 4, 2014

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

s/ *Benjamin Bejar*

BY: Benjamin Bejar
Assistant U.S. Attorney
Attorney ID No. 351131